UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
JOHN YORKE,

                     Plaintiff,

     -vs-

TSE GROUP LLC d/b/a B.B. KINGS BLUES CLUB
& GRILL, TSION BENSUSAN a/k/a DANNY
BENSUSAN, KARL SCHWARZ, STEVEN
BUMBERA, and SPENCER GRAVES,

                   Defendants.
------------------------------------------------------------------ x

Case No.: 1:18-cv-05268 (JMF)


# DEFENANDANTS' MEMORANDUM OF LAW
# IN SUPPORT OF MOTION TO COMPEL
# ARBITRATION AND/OR TO DISMISS


HOGAN LOVELLS US LLP
   Attorneys for TSE GROUP LLC d/b/a
   B.B. KINGS BLUES CLUB & GRILL
   and TSION BENSUSAN
875 Third Avenue
New York, NY  10022
212-918-3260

*Of Counsel*:
    Kenneth Kirschner

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................................................1

STATEMENT OF FACTS ..................................................................................................................2

CONSENT TO ARBITRATION .........................................................................................................3

ARGUMENT ......................................................................................................................................5

    POINT I -- THE COURT SHOULD COMPEL THIS MATTER IN ITS ENTIRETY
        TO ARBITRATION ..........................................................................................................5

        A.      Arbitration Agreement ..............................................................................................5

        B.      Delegation Provision..................................................................................................6

        C.      Non-Signatories .........................................................................................................7

    POINT II -- IN ANY EVENT, PLAINTIFF FAILED TO PLEAD SUFFICIENT
        FACTS TO ALLEGE OVERTIME CLAIMS .............................................................10

CONCLUSION.................................................................................................................................12

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES:**

*ACE Capital Re Overseas Ltd. V. Cent. United Life Ins. Co.*,
   F.3d 24, 29 (2d Cir. 2002)..................................................................................................5

*Arciniaga v. Gen. Motors Corp.*,
   460 F.3d 231 (2d Cir. 2006).................................................................................................5

*Ayala v. Looks Great Servs., Inc.*,
   14 Civ. 6035 (ADS) (SIL), 2015 WL 236926 (E.D.N.Y. July 23, 2015)...............................11

*Bustillos v. Acad, Bus, LLC*,
   No. 13 Civ. 565 (AJN), 2014 WL 116012 (S.D.N.Y. Jan. 13, 2014)....................................11

*Collins & Aikman Prods. Co. v. Bldg. Sys. Inc.*,
   58 F.3d 16 (2d Cir. 1995)......................................................................................................5

*Contec Corp. v. Remote Solution Co.*,
   398 F.3d 205 (2d Cir. 2005).................................................................................................7

*Daly v. Citigroup Inc.*,
   No. 16-cv-9183 (RJS) (S.D.N.Y. February 6, 2018) )(Decision and Order)
   appeal filed, No. 18-CV-665 (2d Cir. March 8, 2018) ........................................................5

*David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)*,
   923 F.2d 245 (2d Cir. 1991).................................................................................................5

*Dejesus v. HF Mgmt. Servs. LLC*,
   726 F.3d 85 (2d Cir. 2013)............................................................................................10, 11

*Dhue v. O'Reilly*,
   No. 18-cv-2547 (DAB) (S.D.N.Y. October 10, 2018) )(Memorandum &
   Order)................................................................................................................................7, 8

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018).........................................................................................................5

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995).............................................................................................................6

*Fridman v. GCS Computers LLC*,
   17 Civ. 6698 (S.D.N.Y. March 27, 2018)(Opinion and Order).....................................10, 11

## **TABLE OF AUTHORITIES—Continued**

**Page(s)**

*Hartford Accident & Indemnity Co. v. Swiss Reinsurance Am. Corp.*,
    246 F.3d 219 (2d Cir. 2011) ................................................................................... 5

*Hirschfeld Prods., Inc. v. Mirvish*,
    88 N.Y.2d 1054, 651 N.Y.S.2d 5 (1996) ................................................................ 8

*Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*,
    67 F.3d 20 (2d Cir. 1995) ....................................................................................... 5

*Lowry v. JPMorgan Chase Bank, N.A.*
    522 F. App'x 281 (6th Cir. 2013) ........................................................................... 6

*Lundy v. Catholic Health Sys. of Long Island Inc.*,
    711 F.3d 106 (2d Cir. 2013) ................................................................................. 10

*McAllister Bros., Inc. v. A & S Transp. Co.*,
    621 F.2d 519 (2d Cir. 1980) ................................................................................... 8

*Merrill Lynch Intl. Fin., Inc. v. Donaldson*,
    27 Misc. 3d 391, 895 N.Y.S.2d 698 (Sup. Ct. N.Y. Cty. 2010) ............................. 9

*Nakahata v. New York-Presbyterian Healthcare Sys. Inc.*,
    723 F.3d 192 (2d Cir. 2013) ................................................................................. 10

*Perkins v. 199 SEIU United Healthcare Workers E.*,
    73 F. Supp. 3d 278, 290 (S.D.N.Y. 2014) ............................................................ 11

*Ragone v. Atlantic Video*,
    595 F.3d 115 (2d Cir. 2010) ................................................................................... 9

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010) .................................................................................................. 6

*Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l. Inc.*,
    198 F.3d 88 (2d Cir. 199) ....................................................................................... 8

*Tantaros v. Fox News Network, LLC, et al.*,
    Index No. 157054/2016 (Sup. Ct. N.Y. Cty. February 15, 2017) ....................... 8, 9

S<span style="font-size:smaller">TATUES</span>:

9 U.S.C. § 2 ............................................................................................................... 5

9 U.S.C. § 3 ............................................................................................................... 5

## TABLE OF AUTHORITIES—Continued

**Page(s)**

9 U.S.C. § 4 .................................................................................................................5

**PRELIMINARY STATEMENT**

Plaintiff John Yorke filed the instant complaint against TSE Group LLC d/b/a B.B. Kings ("B.B. Kings") and individual defendants.[1] The Complaint seeks federal and state wage and hour claims despite the fact that Plaintiff signed a binding arbitration agreement containing a delegation provision pursuant to the Rules of the American Arbitration Association ("AAA") agreeing to submit "all claims" to arbitration including those under the Fair Labor Standards Act ("FSLA") and any applicable state laws. As a result of the arbitration agreement, the Court should stay or dismiss these proceedings and compel Plaintiff to arbitrate the claims. If Plaintiff claims the disputes are not arbitrable, under settled U.S. Supreme Court law, the arbitrator, not the Court, must decide such questions due to the delegation provision in the agreement requiring the arbitrator to decide his or her jurisdiction and whether the matter is arbitrable.

Plaintiff presumably added the individual defendants to the case in the hopes of defeating arbitration because the arbitration agreement is between Plaintiff and B.B. Kings. However, under settled federal and New York law, even if Plaintiff dismissed B.B. Kings, Plaintiff would still be required to arbitrate the matter with the non-signatories who were intertwined with B.B. Kings.

In any event, Plaintiff's Complaint fails to meet the minimum pleading standards for an FLSA complaint under the Second Circuit's trilogy of cases requiring specificity in overtime suits. For example, Plaintiff fails to plead in his Complaint the dates of his employment, his job title, whether it is exempt or not, his specific rates of pay and during what periods, the dates and

---

[1] The only parties that have concededly been properly served are B.B. Kings and Tsion Bensusan (collectively "Defendants"), who Hogan Lovells represents. On information and belief, the other individual defendants were not personally served and failed to receive process at their home or principal place of business. Kirschner Decl. ¶ 2.

1

times he allegedly worked overtime, his duties and responsibilities, or that he in fact did receive overtime pay. Kirschner Decl. ¶ 3.

Accordingly, Defendant B.B. Kings and Tsion Bensusan respectfully request the Court to compel this case to arbitration. If the Court declines to do so, it should dismiss the case for failure to plead with specificity the elements of the claims.

## STATEMENT OF FACTS

Plaintiff alleges that he brings this suit for wage and hour claims as "a person employed by defendants at any time after May 29, 2012, or earlier," Complaint ¶ 17[2], but fails to state when he actually began work, what he did, his job title, his specific pay rate, [3] when he allegedly worked overtime, what his work schedule was or whether his work was exempt (Kirschner Decl. ¶ 3).

Plaintiff further omits any reference in the Complaint to the Consent to Arbitration that he signed with B.B. Kings. As a result, Counsel for B.B. Kings informed Plaintiff's counsel of the arbitration agreement and requested withdrawal of the Complaint. Kirschner Decl. ¶ 5, Ex. B. Plaintiff and his counsel failed to do so which caused B.B. Kings and Tsion Bensusan to make the instant Motion to Compel and/or Dismiss.

Plaintiff's Complaint omits any mention of his signed Acknowledgement that he agreed to submit this claim to arbitration. His signed statement states:

> I further acknowledge that I received and read the Consent to Arbitration which is found in this Handbook, and I knowingly and voluntarily agree to the obligation set forth therein.

Kirschner Decl. ¶ 5, Ex. B.

---

[2] The Complaint is annexed to the Kirschner Decl. as Exhibit A. The numbers after the Complaint refer to the paragraphs of the Complaint.

[3] Plaintiff claims his hourly rate of pay was between $12.50 and $17.50. Complaint ¶ 25.

The Consent to Arbitration in the Handbook specifically provides for final and binding arbitration pursuant to the AAA Employment Arbitration Rules and Mediation Procedures ("Rules"):

## **CONSENT TO ARBITRATION**

In consideration of Employee's employment and/or continued employment with the Company, Employee and the Company agree to arbitrate all claims that Employee or the Company now or hereafter may have in connection with Employee's employment with the Company, including, but not limited to, those described below.

Employee and the Company will submit to binding, final and exclusive arbitration before an impartial arbitrator experienced in employment matters jointly selected by the parties pursuant to the Employment Arbitration Rules and Mediation Procedures ("Rules") of the American Arbitration Association ("AAA"). This mutual obligation to arbitrate means that Employee and the Company agree to submit all claims, including, but not limited to, any employment claims (as defined below), defamation claims, wage, bonus or benefit claims, wrongful or unlawful discharge claims, contract, tort or common law claims, harassment or discrimination claims, or claims for stock or stock options, that Employee now or hereafter may have arising out of or relating to Employee's hiring, Employee's employment, a term or condition of Employee's employment, or any termination of Employee's employment. This mutual agreement to arbitrate will not preclude Employee from pursuing any substantive statutory rights or legal remedies to which he may be entitled. This mutual agreement to arbitrate merely designates the forum in which all employment claims, by Employee or The Company, must be heard.

For purposes of this Consent to Arbitration, the term "employment claims," as used herein, includes any federal, state, or local laws arising under the Civil Rights Acts of 1866, 1870 and 1871, the Equal Pay Act of 1963, Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), the Older Worker Benefits Protection Act ("OWBPA"), the Civil Rights Act of 1968, the Rehabilitation Act of 1973, the Vietnam-Era Veterans' Readjustment Assistance Act of 1974, the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), the Immigration Reform and Control Act, the American with Disabilities Act of 1990 ("ADA"), the Employee Retirement Income Securities Act (ERISA), the Civil Rights Act of 1991, the Family and Medical Leave Act ("FMLA"), the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), the Worker Adjustment and Retraining Notification ("WARN") Act, the Fair Labor Standards Act ("FLSA"), the Sarbanes-Oxley Act, and any applicable federal, state or local anti-discrimination, equal employment opportunity, wage or protective labor statutes, regulations or laws.

THIS MUTUAL OBLIGATION TO ARBITRATE MEANS THAT EMPLOYEE AND THE COMPANY ARE VOLUNTARILY GIVING UP THE OPPORTUNITY TO

HAVE A JUDGE OR JURY DETERMINE ANY SUCH DISPUTES IN A FORMAL PROCEEDING. Employee and the Company are nonetheless agreeing to arbitrate such claims in the hope of obtaining, through arbitration, a speedier resolution of any such dispute, with greater economy, simplicity and informality.

\* \* \*

If Employee brings a claim to arbitration, Employee agrees to pay all filing fees associated with the arbitration up to and including those amounts that would be required to commence a judicial proceeding in state or federal court. The Company will pay any administrative or hearing fees charged by the arbitrator or the AAA.

Employee and the Company agree that the arbitrator will be required to administer the arbitration pursuant to the Rules of the AAA and issue an award, in writing containing a summary of the issues in controversy, and a description of the award issued. Employee and the Company agree that the arbitrator may award damages, and/or other relief, only to the extent then permitted under an applicable federal, state or local statutes. The arbitrator shall have no authority to amend or modify this Consent to Arbitration or abridge or enlarge the procedural or substantive rights of the parties.

Employee and The Company agree that the arbitrator selected pursuant to this Agreement shall hear individual claims and is not permitted to consolidate claims of different employees or hear any class or collective action claims. THIS MEANS THAT EMPLOYEE IS VOLUNTARILY WAIVING HIS OR HER RIGHT TO PARTICIPATE IN A CLASS OR COLLECTIVE ACTION WITH REGARD TO ANY CLAIMS COVERED BY THIS AGREEMENT.

Notwithstanding anything to the contrary in the Rules or the AAA's Code of Conduct for impartial arbitrators, the arbitrator may attempt to mediate the case or the parties may jointly agree to seek private mediation before or during the arbitration.

This Consent to Arbitration shall be governed by the laws of New York. If any provision of this Consent to Arbitration is found by any court or arbitrator to be invalid or unenforceable, such decision or order shall not affect, impair or invalidate the remaining provisions. This agreement does not, however, extend or waive any statutes of limitations or other provisions of law that specify the time within which any claim must be brought.

\* \* \*

By signing the Acknowledgment of Receipt of Employee Handbook and Consent to Arbitration, Employee and The Company acknowledge that they have read this Consent to Arbitration and knowingly and voluntarily agree to the obligations set forth herein.

Kirschner Decl., Ex. B.

Additional facts appear in the Argument.

4

## ARGUMENT

## POINT I

### THE COURT SHOULD COMPEL THIS MATTER IN ITS ENTIRETY TO ARBITRATION

A.    Arbitration Agreement

It is undisputed that Plaintiff signed the Consent to Arbitrate claims including those involving the FLSA or state law equivalent, his wages or employment. Kirschner Decl.; Ex. B The U.S. Supreme Court in *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018) recently reiterated the strong public policy in favor of arbitration.

In *Daly v. Citigroup Inc.*, No. 16-cv-9183 (RJS) (S.D.N.Y. February 6, 2018)(Decision and Order), appeal filed No. 18-cv-665 (2d Cir. March 8, 2018), the Court held:

> Under the Federal Arbitration Act, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "A district court has no discretion regarding the arbitrability of a dispute when the parties have agreed in writing to arbitration." *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir. 1995) (citing 9 U.S.C. §§ 3, 4). Federal Policy favors arbitration "as an alternative means of dispute resolution." *Hartford Accident & Indemnity Co. v. Swiss Reinsurance Am. Corp.,* 246 F.3d 219, 226 (2d Cir. 2011). Indeed, the Second Circuit has stated that "it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we 'have often and emphatically applied.'" *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006) (quoting *Leadertex,* 67 F.3d at 25). Accordingly, "where . . . the existence of an arbitration agreement is undisputed, doubts as to whether a claim falls within the scope of that agreement should be resolved in favor of arbitrability." *ACE Capital Re Overseas Ltd. V. Cent. United Life Ins. Co.*, F.3d 24, 29 (2d Cir. 2002); *see also Collins & Aikman Prods. Co. v. Bldg. Sys. Inc.,* 58 F.3d 16, 19 (2d Cir. 1995) ("'[F]ederal policy requires us to construe arbitration clauses as broadly as possible.' . . . We will compel arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" (quoting *David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London),* 923 F.2d 245, 250 (2d Cir. 1991))).

*Id*. at p. 4-5.

Where, as here, the arbitration provision clearly encompasses all claims dealing with wages and employment, this case must be compelled to the AAA arbitral forum.

B.  Delegation Provision

As the Supreme Court has explained, parties may agree to arbitrate both the "merits" and the "arbitrability" of a contractual dispute – that is, they may agree to arbitrate not only "whether [one party is] personally liable to" the other, but also "whether they agreed to arbitrate" in the first place.  *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 942 (1995).  Although it is "presume[d] that parties leave arbitrability questions to courts, that presumption may be overcome through " 'clear and unmistakable' evidence" that the parties "agreed to arbitrate arbitrability."  *Id.* at 944; *see Lowry v. JPMorgan Chase Bank, N.A.* 522 F. App'x 281, 283 (6th Cir. 2013).  One way parties may provide that clear and unmistakable evidence is by including a "delegation provision" in their contract that clearly assigns arbitrability questions to an arbitrator.  *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010).

A provision such as in the instant case directing an arbitrator to resolve disputes pursuant to the AAA Rules furnishes such clear and unmistakable evidence.  The Consent to Arbitration acknowledged and signed by Plaintiff states:

> . . . the arbitrator will be required to administer the arbitration pursuant to the [Employment Arbitration Rules and Mediation Procedures] Rules of the AAA . . .

Kirschner Decl., Ex. B.

The AAA's Employment Arbitration Rules and Mediation Procedures specifically provide in Rule 6 that the arbitrator decides questions of arbitrability:

> a.  The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

\* \* \*

c. A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that give rise to the objection.

Kirschner Decl. ¶ 6, Ex. C at p. 12.

Hence, if Plaintiff claims that the arbitration agreement is solely between B.B. Kings and himself, it is up to the arbitrator to decide whether the additional individual defendants, if properly served, are subject to arbitration. The incorporation of the delegation provision "serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005).

C. Non-Signatories

There is no question that B.B. Kings and Plaintiff are signatories to the arbitration agreement. Plaintiff may attempt to evade arbitration by dropping B.B. Kings as a litigant. However, such a tactic would still be unavailing. In a recently decided case, *Dhue v. O'Reilly*, No. 18-cv-2547 (DAB) (S.D.N.Y. October 10, 2018)(Memorandum & Order), the Court was confronted with a motion to compel arbitration even though the litigants were not both signatories to an arbitration agreement. However, defendant William O'Reilly who worked for Fox News, was able to compel arbitration due to Fox News' arbitration agreement which contained a delegation clause. The Court held:

> Plaintiff argues that Defendant O'Reilly cannot avail himself of the Settlement Agreement's arbitration clause both because he is not a party to the contract and because the defamation action is not a "similar dispute" sufficient to estop Plaintiff from denying her obligation to arbitrate. Both arguments fail. This Court HOLDS that Plaintiff, a signatory to the Settlement Agreement, is estopped from avoiding arbitration with Defendant, a non-signatory, because the Parties and the Defendant "have a sufficient relationship to each other and to the rights created under the agreement." Contec Corp. v. Remote Solution Co., 398 F.3d 205, 209 (2d Cir. 2005).

> In the alternate she argues that even if Defendant could avail himself of the arbitration clauses, this dispute falls outside the scope of the agreement and thus is not subject to arbitration. We do not reach the merits of this argument. We instead conclude that the threshold question, whether Plaintiff agreed to arbitrate this issue, must be decided by an arbitrator.

*Id.* at p. 5.

The Second Circuit has "repeatedly found that non-signatories to an arbitration agreement may nevertheless be bound according to 'ordinary principles of contract and agency.'" *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l. Inc.*, 198 F.3d 88, 97 (2d Cir. 199) (quoting *McAllister Bros., Inc. v. A & S Transp. Co.,* 621 F.2d 519, 524 (2d Cir. 1980)); *Hirschfeld Prods., Inc. v. Mirvish*, 88 N.Y.2d 1054, 1056, 651 N.Y.S.2d 5, 6 (1996) ("[T]he Federal courts have consistently afforded agents the benefit of arbitration agreements entered into by their principals to the extent that the alleged misconduct relates to their behavior as officers or directors or in their capacities as agents of the corporation.")

With respect to each individual defendant, Plaintiff claims that they were all a "principal, officer and/or manager" of B.B. Kings, they "controlled the terms and conditions of employment" of Plaintiff and "exercised close control over the managerial operations of Defendant B.B. Kings including the policies and practices concerning employees." Complaint ¶¶ 34, 35, 36, 43, 44, 45, 52, 53, 54, 61, 62, 63. As such, they are so intertwined with B.B. Kings as to be able to avail themselves of the arbitration agreement.

In a case similar to *Dhue v. O'Reilly*, the Court in *Tantaros v. Fox News Network, LLC, et al.*, Index No. 157054/2016 (Sup. Ct. N.Y. Cty. February 15, 2017) held in an oral opinion that:

> At this point in time I'm going to render my decision on the record. Plaintiff's employment at Fox was covered by an employment agreement that contained a valid, broad and unambiguous arbitration provision requiring that any controversy, claim or dispute arising out of or relating to this agreement or your employment shall be brought before a mutually selected three member arbitration panel. Ample case law in both New York State and the Federal Courts has held that all the claims and controversies sought to

8

> be litigated by plaintiff fall within the terms of the parties broad arbitration provision. Including her claims under the New York State Human Law for harassment and retaliation, as well as her claims for tortious interference, since those claims arose within the scope of plaintiff's employment and clearly fall within that scope.
>
> All of the individual defendants, though they are not signatories to the arbitration agreement, can invoke the arbitration clause and compel arbitration.  This would apply even if the claims against them were severed from the claims against Fox.  The misconduct alleged by plaintiff relates to these individual's behavior as officers, directors and employees or agents of Fox, and they necessarily relate to their alleged conduct as agents of Fox News.  Further, a careful review of the claims against the individual defendants shows that these claims are factually intertwined with the agreement and the claims against Fox News.  The claims against the individual defendants involve the very same issues and circumstances.  This principle applies equally to the employment claims and the tortious interference claims at issue in this case.  Allowing such claims to proceed in court would be contrary to established public policy strongly favoring arbitration of such disputes.

*Id.* at p. 36-37.

A signatory to an arbitration agreement can be compelled to arbitrate claims with a nonsignatory "where a careful review of the relationship among the parties, the contracts they signed . . . , and the issues that had arisen among them discloses that the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Merrill Lynch Intl. Fin., Inc. v. Donaldson*, 27 Misc. 3d 391, 396, 895 N.Y.S.2d 698, 703 (Sup. Ct. N.Y. Cty. 2010) (quotations and citations omitted).  *See also Ragone v. Atlantic Video*, 595 F.3d 115, 126-27 (2d Cir. 2010) ("[u]nder principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where … the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed" and where there is "a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement.") (quotations and citations omitted).

9

As such, all the claims should be compelled to arbitration and Plaintiff can attempt to properly serve the remaining Defendants.

## POINT II

### IN ANY EVENT, PLAINTIFF FAILED TO PLEAD SUFFICIENT FACTS TO ALLEGE OVERTIME CLAIMS

The Second Circuit Court of Appeals in a trilogy of FLSA cases set forth strict requirements for pleading FLSA and state claims. *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013); *Nakahata v. New York-Presbyterian Healthcare Sys. Inc.*, 723 F.3d 192 (2d Cir. 2013); *Dejesus v. HF Mgmt. Servs. LLC*, 726 F.3d 85 (2d Cir. 2013). Plaintiff alleges in the complaint that he "regularly worked for the Defendants in excess of forty (40) hours a week but never received an overtime premium of one and one half times his regular rate of pay for those hours." Complaint ¶ 28. Plaintiff did not provide any specificity of the hours worked, rate of pay or even what job he held.

In *Fridman v. GCS Computers LLC*, 17 Civ. 6698 (S.D.N.Y. March 27, 2018)(Opinion and Order), the Court dismissed plaintiff's FLSA and New York Labor Law claims for lack of specificity and lack of supplemental jurisdiction:

> Finally, in Dejesus, the plaintiff pled that she worked more than forty hours a week in "some or all weeks" without being paid "1.5 times her rate of compensation." Dejesus 726 F.3d at 89 (internal quotation marks omitted). The Second Circuit found these allegations insufficient to state a claim because the plaintiff only repeated FLSA's statutory language and failed to "estimate her hours in any or all weeks or provide any other factual context or content." Id. see id. at 87 (quoting the district court's observation that the plaintiff failed to state a claim for overtime violations because she did not "set forth the precise position she held, any approximation of the number of unpaid overtime hours worked, her rate of pay, or any approximation of the amount of wages due").
>
> * * *
>
> Rather, the only allegations relating to overtime in the complaint are when Plaintiff alleges that he "routinely" worked a total of ten or more hours over forty hours per week. Compl. ¶ 26-27; see id. ¶ 39. Yet at no point in the complaint does Plaintiff allege a

10

single particular week he worked more than forty hours or attempt to estimate the number of overtime hours he worked in any of the weeks employed. While adequate pleadings do not require "mathematical precision," Plaintiff's current allegations are not enough. Dejesus, 726 F.3d at 90. A plaintiff is "reasonably expected to recall basic facts about his own work experience, such as when he worked overtime; whether he came to work early, stayed late, or took on additional shifts; approximately how many extra hours he worked per week; and the types of tasks he performed during his overtime hours." Perkins v. 199 SEIU United Healthcare Workers E., 73 F. Supp. 3d 278, 290 (S.D.N.Y. 2014). While Plaintiff "may not possess the complete documentary records regarding the hours that [he] worked," Plaintiff needs to provide "content and context to [his] allegations to make [his] overtime claim plausible." Ayala v. Looks Great Servs., Inc., 14 Civ. 6035 (ADS) (SIL), 2015 WL 236926, at *9 (E.D.N.Y. July 23, 2015); see also Perkins, 73 F. Supp. 3d at 289 (internal citations omitted) (dismissing FLSA overtime claim when the plaintiff's complaint alleged "only that, '[a]t all relevant times' since 2008, he 'was assigned and actually worked more than 40 hours per week,' and that the Hospital failed to pay him overtime compensation"); Bustillos v. Acad, Bus, LLC, No. 13 Civ. 565 (AJN), 2014 WL 116012 , at *4 (S.D.N.Y. Jan. 13, 2014) (dismissing FLSA overtime claim because "there should be sufficient factual allegations in the Amended Complaint-rather than a general and conclusory allegation as to the number of hours 'routinely' worked-whereby the Court can reasonably infer that there was indeed one or more particular workweek(s) in which the plaintiff suffered an overtime violation").

*Id.* at p. 8-11.

The instant Complaint does not set forth the position Plaintiff held, an approximation of the number of unpaid overtime hours worked, if any, a precise rate of pay, an estimate of the wages due, the weeks he allegedly worked overtime, or the tasks he performed on overtime. Under settled Second Circuit law, the allegations are insufficient to state a claim. Kirschner Decl. ¶ 3. Accordingly, if the Court does not compel arbitration of this matter, it respectfully should dismiss the Complaint for insufficient factual allegations regarding Plaintiff's wage and hour claims.

## CONCLUSION

For all the foregoing reasons, this Court should grant the Motion to Compel and/or Motion to Dismiss and provide such other and further relief including reasonable costs and attorney's fees.

Dated: New York, New York
October 23, 2018

                                                  Respectfully submitted,

                                                  /s/ Kenneth Kirschner
                                                  Kenneth Kirschner
                                                  HOGAN LOVELLS US LLP
                                                  875 Third Avenue
                                                  New York, New York 10022
                                                  Tel: (212) 918-3260
                                                  Fax: (212) 918-3100
                                                  Kenneth.Kirschner@hoganlovells.com

                                                  Attorneys for TSE GROUP LLC d/b/a
                                                  B.B. KINGS BLUES CLUB & GRILL and
                                                  TSION BENSUSAN

Of Counsel
    Kenneth Kirschner